UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RENE LOVING AND TARA LOVING<br>*Plaintiffs* | * * * * | CIVIL ACTION NO. 2:22-cv-3900 |
| VERSUS | * * | JUDGE: ELDON FALLON |
| UNITED PROPERTY & CASUALTY INSURANCE COMPANY<br>*Defendant* | * * * | MAGISTRATE: MICHAEL NORTH |

## ORDER & REASONS

The devastation resulting from Hurricane Ida gave rise to thousands of claims against property insurers being filed in or removed to federal court. Many of those insurers became insolvent which in turn caused claims to be made against the Louisiana Insurance Guaranty Association ("LIGA"). Before the Court is Plaintiffs Rene Loving and Tara Loving's Motion to Substitute the Louisiana Insurance Guaranty Association in place of Defendant United Property & Casualty Insurance Company, which has been declared insolvent. R. Doc. 13. There are two procedural vehicles available for adding an entity to an existing complaint filed in federal court: amendment and substitution. The present motion requires the Court to determine which is the appropriate procedural vehicle to add LIGA to this pending complaint and what effect if any this selection will have on the Court's jurisdiction.

I.   APPLICABLE LAW

First, a discussion of the difference between these two procedural vehicles is in order. An amended complaint supersedes the original complaint and therefore impacts diversity jurisdiction, which is assessed at the time of filing the amendment. *See, e.g.*, *Pacific Bell Telephone Co. v. linkLine Commc'ns, Inc.*, 555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint

1

supersedes the original complaint."); *Linicomn v. Hill*, 902 F.3d 529, 534 n.4 (5th Cir. 2018) (observing that the plaintiff abandoned claims when he failed to include them in his amended complaint). Courts in the Fifth Circuit consider several factors when a party seeks to amend and add a non-diverse party, such as, whether the amendment's purpose is to destroy diversity, whether the plaintiff will face prejudice or injury, whether the amendment is dilatory, and other relevant factors. *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987). While courts "should freely give leave when justice so requires," the Fifth Circuit directs district courts to consider these *Hensgens* factors when deciding whether to deny or permit joinder by amendment that would divest the court of its jurisdiction and the defendant of its ability to remove the case to a federal forum. Fed. R. Civ. P. 15(a)(2); *Hensgens*, 833 F.2d at 1182. When a party amends their complaint and adds a non-diverse party, federal courts "may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. §1447(e).

On the other hand, the substitution of a non-diverse party in a federal diversity action does not destroy diversity because diversity is assessed at the time the original action was filed. Thus, a federal court maintains jurisdiction even though the parties post-substitution are not wholly diverse. *See Freeport-McMoRan, Inc., v. K N Energy, Inc.*, 498 U.S. 426, 427-29 (1991) (per curiam) (holding that the Rule 25 substitution of a non-diverse party in a diversity action does not destroy diversity because diversity is assessed at the time the original action was filed); *Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971) ("Subject matter jurisdiction, once it validly exists among the original parties, remains intact after substitution."). The relevant difference between substitution and amendment is the jurisdictional analysis at the time the action is filed, which changes when the complaint is amended, but not when substitution is allowed. *See Pacific Bell*, 555 U.S. at 456 n.4. A preliminary issue facing the Court, however, is whether LIGA is even

2

eligible for a Rule 25 substitution in the first place.

### a. Federal Rule of Civil Procedure 25

Federal Rule of Civil Procedure 25 permits the substitution of a party to a suit in four circumstances, either upon a party's motion or the court's *sua sponte* action. *See* Fed. R. Civ. P. 25. The first three include a party's death or incompetency and in certain instances involving public officers who "die[], resign[], or otherwise cease[] to hold office while the action is pending." *Id.* at 25(a), (b), (d). The fourth circumstance in which substitution is permitted is upon a transfer of interest. Rule 25(c) states that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." *Id.* at 25(c). An initial question underlying the present motion is whether LIGA qualifies as a transferee of interest so that it can be substituted for the insolvent insurer pursuant to Rule 25(c). While the plain language of the Rule does not require the statutory successor must possess the same interest as the transferor, many federal courts have applied the Rule as such, most frequently in corporate contexts. *See, e.g.*, *Explosives Corp. of America v. Garlam Enterprises Corp.*, 817 F.2d 894, 906-07 (1st Cir. 1987) (addressing a corporate successor post-merger); *Panther Pumps & Equip. Co. v. Hydrocraft, Inc.*, 566 F.2d 8, 27-28 (7th Cir. 1977) (same).

### b. LIGA's Creation and Structure

Prior to 1970, a policyholder of an insolvent insurer was required to seek resolution of their unresolved claim in a liquidation proceeding along with other creditors or pursue the insured tortfeasor who generally had limited or no assets. *See* Carey J. Guglielmo & Daniel J. Balhoff, *The ABC's of LIGA*, 53 La. L. Rev. 1759, 1759 (1993). Either of these approaches usually resulted to the detriment of the policyholder. In the late 1960s, the United States Senate proposed several bills

that would protect policyholders from the effects of an insurer insolvency and ultimately the National Association of Insurance Commissioners proposed a Model Act, which many states soon thereafter adopted. *Id.* The LIGA law is Louisiana's codified version of this model act. *See id.*; La. R.S. §22:2052. LIGA was created by the Louisiana legislature in 1970 to address situations where an insurer is declared insolvent and claimants or policyholders with unresolved claims against that insurer were left without satisfaction. As defined by the statute, LIGA's purpose is

> to provide for the payment of covered claims under certain insurance policies with a minimum delay and a minimum financial loss to claimants or policyholders due to the insolvency of an insurer, to provide financial assistance to member insurers under rehabilitation or liquidation, and to provide an association to assess the cost of such operations among insurers.

La. R.S. §22:2052.

LIGA is "a private nonprofit unincorporated legal entity" composed of member insurers conditioned on "their authority to transact insurance in this state." La. R.S. §22:2506(A). By statute, LIGA "is not and may not be deemed a department, unit, agency, or instrumentality of the state for any purpose." *Id.* at §22:2056(B). *But see id.* at §22:2056(C)(1) (noting that LIGA is, however, considered a public body for the purposes of La. R.S. §42:11 et seq., the "Open Meetings Law"). LIGA is granted the authority to "[s]ue or be sued," including "the power and right to intervene as a party before any court in this state that has jurisdiction over an insolvent insurer." La. R.S. §22:2508 §22:2058(B)(3). LIGA's statutory duty is to pay covered claims that existed prior to an insurer's insolvency or that arose shortly thereafter. *Id.* at §22:2508(A)(1)(a). For jurisdictional purposes, LIGA is considered to have the citizenship "of each of its constituent member insurers," which include Louisiana insurers, thus making diversity jurisdiction unlikely. *Temple Drilling Co. v. Louisiana Ins. Guaranty Ass'n*, 946 F.2d 390, 394 (1991) (relying in part on *Rhulen Agency v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 677 (2d Cir. 1990) (interpreting

the citizenship for diversity purposes of state insurance guaranty associations)); *Landry v. Circle K. Stores, Inc.*, No. 16-15705, 2017 WL 3065105, at *1 (E.D. La. July 19, 2017) (finding LIGA to be a citizen of Louisiana for diversity purposes).

Importantly, the statutory scheme that created and defined LIGA's duties limits its responsibility to "covered claims." *See* La. R.S. §22:2058 (mentioning "covered claims" throughout). Further, this section of the Louisiana Code provides that LIGA is subject to certain caps in payments to claimants and is not bound by certain settlements "executed by an insured or the insurer." *Id.* at §22:2058(A)(1)(b); *id.* at §22:2058 (A)(6)(a). This precipitates the question: Do these limitations prevent LIGA from qualifying as a transferee in interest or statutory successor since its interest is not the same as the insurer?

### c. Is LIGA the transferee of interest?

A review of the cases fails to give a definitive answer. Some federal district court cases in this Circuit have concluded that LIGA is the successor in interest to an insolvent, now-defunct insurance company subject to a lawsuit. These courts have found that LIGA stands in the shoes of the defunct insurer and thus would permit its substitution. *See, e.g.*, *Myers v. FedNat Ins. Co.*, No. 22-CV-02143, 2023 WL 3139790, at *2 (W.D. La. Apr. 27, 2023); *Reeves v. Southern Fidelity Ins. Co.*, 2023 WL 2958279, at *2 n.1 (W.D. La. Apr. 13, 2023). However, Louisiana state courts, and some other federal district courts, have found otherwise, interpreting the LIGA statute to fall short of providing LIGA the full interest such that LIGA rather stands with one shoe on and one shoe off. Furthermore, a scholarly article argues that stepping into the shoes does not equate to being the legal successor or transferee of interest such that substitution under Rule 25 is proper. Carey J. Guglielmo & Daniel J. Balhoff, *The ABC's of LIGA*, 53 La. L. Rev. 1759, 1761 (1993). This article points to a number of state court cases that cabin LIGA's role as a successor in interest

because the statutory scheme limits their liability only to "covered claims." *See, e.g.*, *Veillon v. LIGA*, 608 So. 2d 670, 672 (La. App. 3 Cir. 1992) (rejecting plaintiff's argument that LIGA stands in the shoes of the insolvent insurer "for all purposes" and citing with approval a case from Washington State that narrowly construes covered claims under its own statutory framework); *Gauthier v. Champion Ins. Co.*, 583 So. 2d 556, 557-60 (La. App. 3 Cir. 1991) (holding that LIGA is not liable for penalties and attorney's fees because these are not "covered claims" under LIGA's statutory framework). A follow-up article written in 2017 reiterates this perspective: "LIGA is not the legal successor or 'statutory successor' of insolvent insurers, despite often being characterized as such by courts." Stephanie B. Laborde, James E. Moore, & Heather L. Landry, *The DEF's of LIGA*, 77 La. L. Rev. 997, 1001 (2017).

## II. DISCUSSION

The jurisprudence on this matter is conflicting and offers little guidance. *See, e.g.*, *Tyburczy v. Graham*, 1994 WL 150724, at *4 (E.D. La. Mar. 30, 1994) (Duplantier, J.) ("When an insurer such as Alliance becomes insolvent, it ceases to exist, and the liquidator or receiver becomes its legal successor, not LIGA."); *Republic of Texas Sav. Ass'n v. First Republic Life Ins. Co.*, 417 So. 2d 1251, 1254 (La. App. 1 Cir. 1982) ("These powers indicate that the rehabilitator does not stand precisely in the shoes of First Republic."); *Myers*, 2023 WL 3139790, at *2 ("Should plaintiff wish to proceed against LIGA in this forum, he might consider filing a Motion to Substitute LIGA for FedNat as its statutory successor in interest to the obligations of the insolvent insurer.") (citing *Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971)); *Mancuso v. Siegel*, 646 So. 2d 1200, 1202 (La. App. 5 Cir. 1994) ("LIGA was not a party to the insurance contract either, but LIGA is clearly the successor in interest of [insurer], by virtue of the statutory law requiring it to stand in the shoes of an insolvent insurer.").

First, the Court observes that Rule 25(c) applies to a transfer of interest and does not require, by its plain text, that the transferee be the legal or statutory successor, although in practice, many federal courts apply this requirement, as this Rule comes up frequently in the context of corporate mergers and asset acquisitions. *See Explosives Corp. of America*, 817 F.2d at 906-07; *Panther Pumps & Equip. Co.*, 566 F.2d at 27-28. In any event, Rule 25(c) is "procedural only" and it "does not affect the substantive rights of the parties which are determined by state law.*" Matter of Covington Grain Co., Inc.*, 638 F.2d 1357, 1361 (5th Cir. 1981); *Maldonado v. Valysn S.A.*, 434 F. Supp. 2d 90, 91 (D.P.R. 2006) ("Rule 25(c) is a procedural vehicle; it does not create substantive rights."). The state law determining the rights of the parties in this instance is the LIGA statutory framework. Accordingly, the Court next turns to these laws for guidance.

La. R.S.§ 22:2061(B) states that the "receiver, liquidator, or statutory successor of an insolvent insurer shall be bound by settlements of covered claims by the association or a similar organization in another state." The 1993 article relies on the language of this statute to conclude that LIGA is not the statutory successor because it would make little sense to state the obvious that LIGA binds itself in settlements it enters as to covered claims. In bolstering this viewpoint, the article relies on the language of La. Code Civ. P. 740 which provides that the receiver or liquidator is the proper defendant against an insolvent entity, interpreted by the authors to mean its statutory successor. However, the statute provides that LIGA can bind, through settlements of covered claims, the "receiver, liquidator, *or statutory successor*," which implies that *neither* the receiver nor liquidator are always the statutory successor. *See* La. R.S. § 22:2061(B). Further, La. R.S. § 22:2068(B) uses the same "liquidator, receiver or statutory successor" language to describe who must share relevant records and information from the insolvent insurer with LIGA as it undertakes its statutory duties. It therefore appears that an entity other than the receiver or liquidator is the

7

statutory successor, but the 1993 article concludes from this same statutory language that the successor cannot be LIGA either.

La. Code Civ. P. 741 perhaps bridges this gap. "Receiver" is therein defined to include "liquidator, *rehabilitator, and conservator*." This could mean that the "or statutory successor" language in La. R.S. § 22:2061(B) and other Code provisions simply captures the rehabilitator or conservator as well, such that it would read that the "receiver, liquidator, or [rehabilitator or conservator] of an insolvent insurer shall be bound by settlements of covered claims by the association or similar organization in another state." But the Court is unconvinced, and the statutory language and case law are far from conclusive.

The Court is instead persuaded that the phrase statutory successor, distinct from legal successor, is an appropriate way to characterize LIGA when it comes to *covered claims* only. The statutory scheme gives LIGA the authority, indeed duty, to step into the insolvent insurer's shoes as to covered claims. In this way, LIGA is the statutory successor as to *those* claims. *See* La. R.S. § 22:2058(A) (stating that "the association *shall* do all of the following: (1)(a) Be obliged to pay covered claims") (emphasis added).

The concerns raised in the foregoing scholarly articles can be distinguished under this approach. LIGA is not stepping into the shoes of the insolvent insurer for *all* purposes, as a legal successor frequently does. Nor is this Court attempting to broaden LIGA's liability and thereby risk its solvency. Rather, as a *statutory* successor, LIGA is statutorily obliged to pay covered claims. *Id.* This interpretation of "statutory successor" balances the priorities outlined in LIGA's statutory purpose alongside the practical realities of Louisianans filing covered insurance claims in federal court following a natural disaster that then drives the insurer to insolvency. Further, Laborde et al note, a central issue in LIGA suits is whether the claim is in fact covered. Laborde

8

et al, *supra*, at 1007 ("As the practitioner will quickly learn, much of LIGA litigation centers upon what does or does not represent a 'covered claim.'"). Laborde et al also write that when a party has already filed a suit "against the insurer, he may, but is not required to, substitute LIGA for the insolvent insurer in the litigation." *Id.* To be clear, their discussion centers around Louisiana state litigation and state rules of civil procedure. However, Rule 25(c) addresses a "transfer of interest", and this Court is persuaded that the interest in adjudicating a covered claim is sufficiently transferred to LIGA upon an insurer's insolvency such that Rule 25 is a permissible procedural tool in this context.

An alternative approach, one barring Rule 25's application entirely, while arguable under the existing law, would deprive many plaintiffs who filed originally in federal court of pursuing their covered claims because remand would not apply and the prescription period will have run, at least as it pertains to Hurricane Ida cases like this present case. The Court therefore risks a contrary finding by the Fifth Circuit and a waste of judicial (and parties') resources adjudicating claims in a court lacking jurisdiction. That is an issue for another day and another court.

Thus, substitution is an available procedural vehicle for adding LIGA to an existing complaint in federal court if that complaint seeks the resolution of covered claims. If it is to be added by amendment, however, the Court is divested of its diversity jurisdiction. Accordingly, the Court GRANTS Plaintiffs' motion to substitute.

New Orleans, Louisiana, this 6th day of November, 2023.

                                                        */s/ Eldon E. Fallon*
                                                        **UNITED STATES DISTRICT JUDGE**